UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LEONARD E. BLACKBURN** | **CASE NO. 6:23-CV-01051 SEC P** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JAMES M. LEBLANC, ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Leonard E. Blackburn on May 4, 2023. Plaintiff is incarcerated at the BB Rayburn Correctional Center in Angie, Louisiana. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court. For reasons stated below, IT IS RECOMMENDED that the matter be DENIED and DISMISSED WITH PREJUDICE as frivolous and for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

### I. Background

Blackburn makes various complaints against numerous defendants. He asserts a claim of defamation against staff at Rayburn who have been "engaging in a systematic and retaliatory campaign against him behind a false label of 'dangerous escapee,'" thereby resulting in damage to his reputation. (Rec. Doc. 1-1 at 3). He alleges that, as a result of this defamation, Tiffany Harris (whose position is stated) delayed his placement testing for education classes and that he had still not been placed in a class.

He next asserts claims related to his legal mail. He complains that staff at Rayburn opened and made copies of his legal mail prior to delivering it to him. (*Id.* at 4). Moreover, he alleges that staff intentionally held a "missive" written to his attorney in April 2022 before

finally mailing it in July 2023. He contends that this delay adversely affected his ability to make a collateral attack on his state criminal case. Blackburn complains that due to the "false label of dangerous escapee," Lt. Col. Wade Rigdon denied his request for a job/custody status change. *Id.* at p. 5. Moreover, he complains that this false label subjected him to certain restrictions, which were not cured through his annual assessment.

Blackburn further complains that he is intentionally being denied presentence jail credits from his arrest to his sentencing date, in violation of his due process rights. (*Id.* at 6). Through the instant complaint, he also alleges a failure to protect/failure to provide safe custody on the part of Cdt. Freeman, Cdt. Kelly Hartley and Lt. Larry Daigle. Specifically, Blackburn alleges that on February 3, 2023, at 9:30 p.m. he was attacked by a fellow inmate. (*Id.* at 7). On that date, the inmate came into Blackburn's bed area during bed count and attacked him. Blackburn asserts that Cdt. Freeman witnessed the inmate approach him using loud, abusive and threatening language toward him prior to the physical altercation but did nothing to stop it. The allegations against Daigle appear to stem from Daigle's failure to supervise Freeman and Hartley. He makes no specific allegation against Hartley.

Blackburn also makes claims regarding visitors at Rayburn. Specifically, he alleges that Dorothy Williams and Carolyn Mingo were approved to visit him. However, during the months of October and November 2022, Williams was denied visitation with no notice to Blackburn. As a result of her disappointment regarding her failed attempt to visit, Williams no longer desires to visit Blackburn. Furthermore, in December 2022, Mingo was made to wait for a table despite being processed first. Again, in March 2023, Mingo was made to wait for over an hour to see Blackburn. She made a complaint to Major Dillon about "the way our time frame and unprofessional way our picnic was handled." (*Id.* at 9).

Finally, Blackburn complains that he was placed in Administrative Segregation without Lt. Daigle or Cpt. Herbert conducting a proper investigation to ensure that

Blackburn's due process rights were protected. He alleges that his placement in segregation was based on a disciplinary report comprised of incomplete facts about a physical altercation between Blackburn and other prisoner.

## II.   Law & Analysis

### A. Frivolity Review

Blackburn has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (failure to state a claim).

### B. Section 1983

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person

acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### C. Claims

#### 1. Defamation

Blackburn's defamation claim is insufficient to establish a cause of action under Section 1983. Damage to reputation alone, apart from some more tangible interest, does not implicate any "property" or "liberty" interest sufficient to invoke the Due Process clause of the Fourteenth Amendment. More must be involved than defamation to establish a Section 1983 claim under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980).

Blackburn does not have a constitutional right to participate in educational class. *See McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995) (holding that the "loss of the opportunity to earn good-time credits" is a "speculative, collateral consequence[]" of a prison administrative decision and does "not create [a] constitutionally protected liberty interest[]."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits).

Accordingly, this claim and all claims against Tiffany Harris should be dismissed.

### 2. Legal Mail

Next, Blackburn alleges that the mail room staff at Rayburn opened his legal mail outside of his presence and made copies of same prior to delivering to him. His claim concerning the alleged mail tampering fails. Even if his mail was opened outside of his presence as he alleges, that fact alone would not rise to the level of a constitutional violation. The Fifth Circuit has expressly held that an inmate's constitutional rights are not violated by the mere fact that his legal mail is opened outside of his presence and without his consent. *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1999); *see also Davis v. Baker*, 251 F. App'x 899 (5th Cir. 2007); *Sanders v. Carnley*, 100 F. App'x 236, 237 (5th Cir. 2004); *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003). This is true even if the jail has a policy that such mail is to be opened only in the inmate's presence, because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009).

To the extent Blackburn alleges that the mail room delayed outgoing mail to his criminal defense attorney, thereby adversely affecting his ability to participate in his defense, this claim also fails. Despite being ordered to amend his complaint to describe the injury or prejudice that resulted from the alleged delay in outgoing legal mail to his attorney (Rec. Doc. 10, p. 5), Blackburn failed to do so. As Blackburn has failed to allege an injury or prejudice in his original or amended complaint, this claim has no merit.

### 3. Internal Review Board Hearing/Request for Job/Custody Change/Annual Assessment

Blackburn complains that Lt. Col. Wade Rigdon disregarded his request for a job/custody change as a result of the "fabricated poor conduct report" and that Karla Wheat intentionally refused to correct the "false label" in his annual assessment. (Rec. Doc. 1-1, p. 5). Blackburn's alleged deprivations of his job, custody status, and privileges are not

protected liberty interests, and therefore, no constitutional right has been violated or is implicated. The fact that he was denied a request for a job or custody status change is not an "atypical and significant hardship" of prison life. *See Bulger v. United States*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits). Blackburn likewise does not have a constitutionally protected liberty interest in his custodial classification or label. *See Neals v. Norwood*, 59 F. 3d 530, 533 (5th Cir. 1995) (noting that a "prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation").

These claims, and all claims against Rigdon and Wheat should be dismissed.

**4. Presentence Credits**

Blackburn complains that Carolyn Thomas, Rayburn's Records Supervisor, intentionally refuses to apply presentence jail credits to which he is entitled. Notwithstanding whether a plaintiff seeks declaratory, injunctive, or monetary relief, a Section 1983 action is *Heck*-barred "if success in the action would necessarily demonstrate the invalidity of confinement or its duration." *See Burgess v. Livingston*, 2017 WL 666129, at *2 (S.D. Tex. Feb. 17, 2017) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). *Heck* applies to claims challenging the calculation of sentences as well as matters involving jail time credits. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (holding that procedural due process claim related to the revocation of good-time credits in a prison disciplinary proceeding is not cognizable under Section 1983 because success on the claim would "necessarily" imply the invalidity of continued imprisonment); *Whitehurst v. Jones*, 278 F. App'x 362, 363 (5th Cir. 2008) (concluding that claims challenging the denial of time credits, which unlawfully extend the period of incarceration, directly implicate the duration of

prisoner's confinement); *Hernandez v. Tisdale,* 2015 WL 1220316, at *6 (S.D. Tex. Mar. 14, 2015) (recognizing that claims challenging the denial of time credits or the calculation of release dates are "subject to *Heck*'s favorable-termination requirement").

Success on Blackburn's due process claims challenging whether jail credits from his January 21, 2008, arrest until his September 29, 2008, sentencing would necessarily implicate the duration of his confinement and lead to an earlier release from custody. In order to obtain Section 1983 relief in this action, Blackburn must show that any calculation with respect to this state court sentence, including determinations related to jail time credits, have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus under Section 2254. *See Heck*, 512 U.S. at 486-87.

**5. Failure to Protect**

Blackburn alleges that on February 3, 2023, he was forced to defend himself against inmate Norman Pete. (Rec. Doc. 1-1, p. 7). On that date, Cdt. Freeman and Cdt. Kelly were left unsupervised by Lt. Larry Daigle during bed count. *Id.* At 9:20 p.m., inmate Pete got out of his bed and was "loud, angry and verbally abusive towards petitioner." (Rec. Doc. 13, p. 1. Blackburn contends that as a direct result of Daigle, Freeman and Kelly's failure to provide "pm count time support," departmental policies, procedures and support protocols were abandoned and Pete was able to plan his attack, thus violating Blackburn's right to safe custody. *Id.* at p. 2. As a result, Blackburn was exposed to "undue pain, suffering, and a physical encounter which should've never happened." *Id.*

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan,* 511 U.S. 825 (1994). In particular, prison officials

have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 834.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. *Farmer*, 511 U.S. at 835. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *Farmer*, 511 U.S. at 837.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. *Farmer*, 511 U.S. at 844. *See also Hinojosa v. Johnson*, 277 F. App'x 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. *Id.* at 848.

A prison guard has a duty to intervene and attempt to end an assault on an inmate. *Buckner v. Hollins,* 983 F.2d 119, 122 (8th Cir. 1993); *see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citing *Smith v. Dooley*, 591 F. Supp. 1157, 1169 (W.D. La. 1984), aff'd, 778 F.2d 788 (5th Cir. 1985)). The Eighth Amendment imposes the requirement on prison officials to restore control in tumultuous situations, but officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state. The requisite mental state in situations where prison officials do not respond with the physical use of force is that of deliberate indifference. *MacKay v. Farnsworth*, 48 F.3d 491 (10th Cir. 1995).

A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault. However, a correctional officer's failure to intervene in an inmate fight does not constitute an Eighth Amendment violation if there is evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned, *i.e.*, the guard is alone and unarmed or another guard has been taken hostage. *Williams v. Mueller*, 13 F.3d 1214, 1215-16 (8th Cir. 1994).

Nothing in Blackburn's complaint suggests that the defendants or anyone else were guilty of deliberate indifference with regard to the unanticipated altercation. Nothing suggests that anyone was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and nothing suggests that anyone actually drew such an inference. Additionally, in considering whether defendants have failed to protect an inmate, courts must look to whether there was a "substantial" or "pervasive" risk of harm preceding the assault. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident as is the case here. *See, e.g., Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and

-9-

something less than a riot). Here, Blackburn alleged no facts to suggest that the altercation with Pete was at all foreseeable. Therefore, to the extent Blackburn alleges a claim of failure to protect, such claim fails to state a claim for which relief may be granted.

### 6. Visitation

Blackburn's claims related to visitation fail as a matter of law because the Fifth Circuit has repeatedly held that a convicted prisoner's "[v]isitation privileges are a matter subject to the discretion of prison officials." *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975). As such, there is simply no constitutionally protected right to visitation for prisoners or their families. *See, e.g., Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) ("[P]risoners have no absolute constitutional right of visitation."); *Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir. 1985) (holding prisoner had no constitutional right to visits from his parents); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980) ("Convicted prisoners have no absolute constitutional right to visitation."). That rule holds true even for spouses and intimate partners. *See McKnight v. Johnson*, 277 F.3d 1373, 2001 WL 1485802 (5th Cir. 2011) (holding that spouses have no constitutional right to visitation); *Young v. Vaughn*, 2000 WL 1056444, at *2 (E.D. Pa. Aug 1, 2000) ("Convicted prisoners, their family and spouses have no constitutional right to visitation," and "[f]ace to face contact with a spouse is important in a marriage, but it is not a federal constitutional right."); *Walters v. United States*, 1995 WL 144657, at *1 (E.D. Pa. Mar. 14, 1995) (Prisoner's wife's claims dismissed because she "has no constitutional rights that could have been violated" and "[s]he herself has no right to visitation or telephone contact with her inmate husband.").

### 7. Due Process Violation/Segregation

Finally, Blackburn complains that he was placed in Administrative Segregation without Lt. Daigle or Cpt. Herbert investigating the facts or complete circumstances of the

incident to ensure that his constitutional rights were protected. He alleges that he was placed in segregation based on a disciplinary report that did not include all pertinent facts regarding the physical altercation with inmate Pete.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's liberty interests "will be generally limited to freedom from restraint which, . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

In general, prisoners do not have a liberty interest in their custodial classification, including their transfer into Administrative Segregation. *See Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam); *Bailey v. Fisher*, 647 F. App'x 472, 474 (5th Cir. 2016) (unpublished per curiam) ("Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life."). For instance, in *Sandin*, the Court held that no liberty interest was implicated by a prisoner's segregated confinement for thirty days. *Sandin*, 515 U.S. at 485-86. To determine if a change in custodial classification implicates a liberty interest, the Court considers both "the nature of the more-restrictive confinement and its duration in relation to prison norms and to the terms of the individual's sentence." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014) (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008)).

Blackburn's placement in Administrative Segregation following the physical altercation with another inmate does not amount to an "atypical" hardship, and this claim should be dismissed.

### III. Conclusion

For reasons stated above, **IT IS RECOMMENDED** that the instant complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.

**THUS DONE AND SIGNED** in chambers this 21st day of March, 2025.

David J. Ayo
United States Magistrate Judge